Filed 8/3/15

# IN THE SUPREME COURT OF CALIFORNIA

GIL SANCHEZ,        )
                  )
       Plaintiff and Respondent,      )
                  )            S199119
       v.                        )
                  )      Ct.App. 2/1 B228027
VALENCIA HOLDING COMPANY, LLC, )
                  )      Los Angeles County
       Defendant and Appellant.      )    Super. Ct. No. BC433634
_____ )

      The automobile sales contract in the present case has an arbitration agreement that provides, among other things, that arbitral awards of $0 or over $100,000 as well as grants but not denials of injunctive relief may be appealed to a panel of arbitrators.  The arbitration agreement also has provisions that require the party appealing the award to front the costs of the appeal, preserve the right of the parties to go to small claims court and to pursue self-help remedies, and waive the right to class action litigation or arbitration.  The agreement further provides that if the class waiver is deemed unenforceable, then the entire arbitration agreement shall be unenforceable.

      In this dispute over the sale of a car, plaintiff Gil Sanchez filed a class action lawsuit against defendant Valencia Holding Company (Valencia), and Valencia moved to compel arbitration.  The trial court denied the motion, finding the class waiver and, in turn, the entire arbitration agreement unenforceable.  Subsequently, the United States Supreme Court held in *AT&T Mobility LLC v.*

*Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*) that the Federal Arbitration Act (FAA) preempts California's unconscionability rule prohibiting class waivers in consumer arbitration agreements. In deciding Valencia's appeal from the trial court's denial of the motion to compel arbitration, the Court of Appeal declined to address whether the class waiver was enforceable and instead held that the arbitration appeal provision and the arbitration agreement as a whole were unconscionably one-sided. Valencia sought our review, relying on *Concepcion*.

While circumscribing the ability of states to regulate the fairness of arbitration agreements, *Concepcion* reaffirmed that the FAA does not preempt " 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1746].) Under the FAA, these defenses may provide grounds for invalidating an arbitration agreement if they are enforced evenhandedly and do not "interfere[] with fundamental attributes of arbitration." (*Concepcion*, at p. __ [131 S.Ct. at p. 1748]; see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1143–1145 (we will use common name, *Sonic II*).) In the present case, we hold that *Concepcion* requires enforcement of the class waiver but does not limit the unconscionability rules applicable to other provisions of the arbitration agreement. Applying those rules, we agree with Valencia that the Court of Appeal erred as a matter of state law in finding the agreement unconscionable. Accordingly, we reverse the judgment below.

**I.**

Plaintiff Gil Sanchez filed this class action in March 2010. Two months later, Sanchez filed a first amended complaint. The complaint arises from Sanchez's purchase of a 2006 "preowned" Mercedes-Benz S500V in 2008 for $53,498.60. Sanchez alleged that Valencia violated the Consumer Legal

2

Remedies Act (CLRA) (Civ. Code, §§ 1750–1784) by making false representations about the condition of the automobile. Sanchez also alleged that Valencia violated several other California laws by (1) failing to separately itemize the amount of the down payment that is deferred to a date after the execution of the sale contract, (2) failing to distinguish registration, transfer, and titling fees from license fees, (3) charging the optional Department of Motor Vehicles electronic filing fee without discussing it or asking if he wanted to pay it, (4) charging new tire fees for used tires, and (5) requiring him to pay $3,700 to have the vehicle certified so he could qualify for the 4.99 percent interest rate, when that payment was actually for an optional extended warranty unrelated to the interest rate. Sanchez alleged violations of the Automobile Sales Finance Act (Civ. Code, §§ 2981–2984.6), the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200–17210), the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790–1795.8), and Public Resources Code section 42885.

The complaint further alleged that a class action was appropriate based on the large number of putative class members who have suffered similar violations, the predominance of common questions of law and fact, the typicality of the claims, and the superiority and benefits of class litigation. He proposed four distinct classes based on the different types of violations Valencia allegedly committed.

Valencia filed a motion to compel arbitration pursuant to an arbitration clause in the sale contract that authorized either party to have any dispute between the parties decided by arbitration. The arbitration clause had a class action waiver: "If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation of individual arbitrations."

3

The arbitration clause further provided: "Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside . . . . We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. . . . Arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.

"You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver

4

of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable."

As the Court of Appeal summarized: "The Sale Contract is a preprinted document consisting of *one page*, 8 1/2 inches wide and 26 inches long. There are provisions on *both* sides that occupy the entire document, leaving little in the way of margins. Sanchez signed or initialed the *front* in eight places, each related to a different provision. No signatures, initials, or other handwriting appears on the *back*. The arbitration provision, entitled '**ARBITRATION CLAUSE**,' is on the *back* at the bottom of the page, outlined by a black box. It is the *last* provision of the Sale Contract concerning the purchase transaction; a provision related to the assignment of the contract appears below it. The buyer's *final* signature appears near the bottom on the *front* side."

In opposing arbitration, Sanchez submitted a declaration that said: "When I signed the documents related to my purchase of the Subject Vehicle, I was presented with a stack of documents, and was simply told by the Dealership's employee where to sign and/or initial each one. All of the documents (including the purchase contracts) were pre-printed form documents. When I signed the documents, I was not given an opportunity to read any of the documents, nor was I given an opportunity to negotiate any of the pre-printed terms. The documents were presented to me on a take-it-or-leave-it basis, to either sign them or not buy the car. . . . There was no question of choice on my part or of my being able to 'negotiate' anything. And I had no reason to suspect that hidden on the back of the contracts . . . was a section that prohibited me from being able to sue the Dealership in court if I had a problem.

". . . When I signed the purchase contract and related documents, the Dealership did not ask me if I was willing to arbitrate any disputes with it, did not

tell me that there was an 'arbitration clause' on the back side of the purchase contract, and I did not see any such clause before I signed the documents. The Dealership did not explain to me what an arbitration clause was. I was not given any opportunity at any time during my transaction with [the] Dealership to negotiate whether or not I would agree to arbitrate any potential disputes. I was not given an option whether to sign a contract with an arbitration clause or one without."

The trial court denied the motion to compel arbitration. It held the class waiver unenforceable on the ground that the CLRA expressly provides for class action litigation and declares the right to a class action to be unwaivable. (See Civ. Code, §§ 1751, 1781.) Because the arbitration clause provided that "[i]f a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable," the court denied the motion to compel arbitration.

After the trial court's decision but before the Court of Appeal's opinion in this case was filed, the United States Supreme Court in *Concepcion*, *supra*, 563 U.S. __ [131 S.Ct. 1740] held that the FAA requires enforcement of class waivers in consumer arbitration agreements and preempts state law to the contrary. The Court of Appeal declined to decide whether the class waiver at issue was enforceable and instead affirmed the trial court's decision on different grounds. First, the court concluded that the agreement contained elements of procedural unconscionability, both oppression and surprise. Second, the court held that four provisions made the agreement unfairly one-sided in favor of Valencia. "First, a party who loses before the single arbitrator may appeal to a panel of three arbitrators if the award exceeds $100,000. Second, an appeal is permitted if the award includes injunctive relief. Third, the appealing party must pay, in advance,

'the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.' Fourth, the provision exempts repossession from arbitration while requiring that a request for injunctive relief be submitted to arbitration. Although these provisions may appear neutral on their face, they have the effect of placing an unduly oppressive burden on the buyer." We granted review.

## II.

To aid understanding of the issues in this case, we begin by discussing general principles of unconscionability. " 'One common formulation of unconscionability is that it refers to " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.' " (*Sonic II*, *supra*, 57 Cal.4th at p. 1133.)

" 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 114

7

(*Armendariz*).) Courts may find a contract as a whole "or any clause of the contrat" to be unconscionable. (Civ. Code, § 1670.5, subd. (a).)

As we stated in *Sonic II*: "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532), ' "unduly oppressive" ' (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925 (*Perdue*)), ' "so one-sided as to 'shock the conscience' " ' (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012) 55 Cal.4th 223, 246 (*Pinnacle*)), or 'unfairly one-sided' (*Little* [*v. Auto Stiegler, Inc.* (2003)] 29 Cal.4th [1064], 1071). All of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' (*Schnuerle v. Insight Communications Co.* (Ky. 2012) 376 S.W.3d 561, 575 (*Schnuerle*)), but with terms that are 'unreasonably favorable to the more powerful party' (8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91). These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' (*Ibid.*)" (*Sonic II*, *supra*, 57 Cal.4th at p. 1145.) Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof. (*Id.* at p. 1148.)

We further observed in *Sonic II*, and reaffirm today, that "an examination of the case law does not indicate that 'shock the conscience' is a different standard in practice than other formulations or that it is the one true, authoritative standard for substantive unconscionability, exclusive of all others." (*Sonic II*, *supra*, 57

8

Cal.4th at p. 1159.) Nor do we see any conceptual difference among these formulations. Rather, "courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.'*" (*Id.* at p. 1160, italics added.) This latter qualification is important. Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: "*overly* harsh," "*unduly* oppressive," "*unreasonably* favorable." (See *Pinnacle*, *supra*, 55 Cal.4th at p. 246 ["A contract term is not substantively unconscionable when it merely gives one side a greater benefit . . . ."].) We clarify today that these formulations, used throughout our case law, all mean the same thing.

An evaluation of unconscionability is highly dependent on context. (See *Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965) 350 F.2d 445, 450 ["The test is not simple, nor can it be mechanically applied."].) The doctrine often requires inquiry into the "commercial setting, purpose, and effect" of the contract or contract provision. (Civ. Code, § 1670.5, subd. (b); accord, *Sonic II*, *supra*, 57 Cal.4th at pp. 1147–1148; *Walker-Thomas Furniture*, at p. 450 [unconscionability must "be considered 'in the light of the general commercial background and the commercial needs of the particular trade or case' "].) As we have recognized, " 'a contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 117; see *Walker-Thomas Furniture*, at p. 450 ["where no meaningful choice was exercised upon entering the contract," the test is "whether the terms are 'so extreme as to appear unconscionable according to the mores and business

9

practices of the time and place' "].)  And, as noted, the substantive unfairness of the terms must be considered in light of any procedural unconscionability.  The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.

Moreover, our unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements.  (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1747].)  Of course, unconscionability can manifest itself in different ways, depending on the contract term at issue.  (See, e.g., *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 916–917 [choice of law clause]); *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 777 [waivers of liability provision]); *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1434 [statutes of limitation provision]; *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495–496 [forum selection clause].)  But the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause.  In particular, the standard for substantive unconscionability — the requisite degree of unfairness beyond merely a bad bargain — must be as rigorous and demanding for arbitration clauses as for any contract clause.

Valencia broadly contends that under *Concepcion*, "absent exceptional circumstances, states — either judicially or legislatively — may not, under the guise of unconscionability, judge the supposed fairness of the parties' agreed arbitration *process*."  In support of that assertion, Valencia cites "the examples of arbitration-process unconscionability evaluations (ranging from discovery to evidentiary requirements) that the FAA precludes."  (See *Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1747].)

10

We recently considered the effect of *Concepcion* on state law unconscionability doctrine and observed that "after *Concepcion*, unconscionability remains a valid defense to a petition to compel arbitration." (*Sonic II*, *supra*, 57 Cal.4th at p. 1142, citing *Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1746].) "What is new," we said, "is that *Concepcion* clarifies the limits the FAA places on state unconscionability rules as they pertain to arbitration agreements. It is well established that such rules must not facially discriminate against arbitration and must be enforced evenhandedly. *Concepcion* goes further to make clear that such rules, even when facially nondiscriminatory, must not disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[] with fundamental attributes of arbitration,' especially its ' "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." [Citation.]' (*Concepcion*, *supra*, 563 U.S. at pp. __, __ [131 S.Ct.at pp. 1748, 1751].)" (*Sonic II*, at p. 1143.)

We proceeded to give examples of "state law rules that do not 'interfere[] with fundamental attributes of arbitration' " and thus "do not implicate *Concepcion*'s limits on state unconscionability rules." (*Sonic II*, *supra*, 57 Cal.4th at p. 1143.) "In *Little*, for example, we found unconscionable a $50,000 threshold for an arbitration appeal that decidedly favored defendants in employment contract disputes. (*Little* [*v. Auto Stiegler, Inc.*], *supra*, 29 Cal.4th at pp. 1071–1074.)" (*Id.* at p. 1144.) As our reference to *Little* suggests, *Concepcion* does not immunize adhesive arbitration processes from state law unconscionability principles as broadly as Valencia contends.

Justice Chin says allowing multiple formulations to capture the notion of substantive unconscionability will undermine predictability and will subject arbitration and nonarbitration provisions of a contract to different standards. (Conc. & dis. opn., *post*, at pp. 14–15.) But we have just made clear that all the

11

formulations "mean the same thing" and "must be as rigorous and demanding for arbitration clauses as for any contract clause." (*Ante*, at pp. 9, 10.) It seems the main reason Justice Chin favors "shock the conscience" as the sole formulation is that he believes it is a higher standard than the alternatives. (Conc. & dis. opn., *post*, at p. 14.) Adopting his approach, however, would call into question a number of cases where we have found substantive unconscionability under other formulations. (See, e.g., *Little*, *supra*, 29 Cal.4th at p. 1074 ["unfairly one-sided"]; *Armendariz*, *supra*, 24 Cal.4th at p. 114 [" ' "overly harsh" ' or ' "one-sided" ' "]; *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820 (*Scissor-Tail*) ["unduly oppressive"].) We see no reason to disturb our precedents, and we reject the view that "shock the conscience" is a higher standard.

We turn now to Valencia's alternative argument that the arbitration agreement in this case was not unconscionable under state law.

**III.**

Valencia does not dispute that the contract was adhesive; at oral argument, Valencia said the contract "meets the definition of adhesive in California." Instead, Valencia argues that "adhesion contracts are not per se procedurally unconscionable," noting that the car was a luxury item and that Sanchez was able to negotiate the price. Although Valencia says Sanchez has not shown he was unable to negotiate the arbitration provision (conc. & dis. opn., *ante*, at p. 12), Valencia does not contend in this court that Sanchez could have opted out of the arbitration agreement or that he could have negotiated a sales contract without an arbitration agreement. Indeed, Valencia acknowledged at oral argument that "[m]any people who are not legally trained do not understand the vast majority of what is in this contract" and that "if you asked that dealer about everything other than the negotiable terms of price and interest, they probably don't understand that either . . . ." Moreover, in the context of consumer contracts, we have never

12

required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions. (See, e.g., *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160, disapproved of on other grounds in *Concepcion*, *supra*, 563 U.S. __ [131 S.Ct. 1740] [cardholder agreement in "bill stuffer" had an element of procedural unconscionability]; *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 924–925 [signature card "offered to the customer without negotiation is a classic example of the contract of adhesion"].)  And although Valencia argues that 90 percent of the standardized contract was mandated by statute, it does not contend that the arbitration agreement was so mandated.

As in many consumer transactions involving standard form contracts, Sanchez apparently did not read the entirety of his contract, including the arbitration clause.  (See Consumer Financial Protection Bur., Arbitration Study: Rep. to Congress Pursuant to the Dodd-Frank Act (Mar. 2015) § 3, p. 19 [fewer than 7 percent of credit card consumers subject to predispute arbitration clauses knew that they could not sue in court]; cf. *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710–711 [applying "the general rule that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with [its] language" to a *nonadhesive* health care contract negotiated by the Board of Administration of the State Employees Retirement System on the plaintiff's behalf].)

On the other hand, Valencia was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to Sanchez's attention.  Any state law imposing such an obligation would be preempted by the FAA.  (See *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 684, 687–688 [holding state statute requiring arbitration clause to be in underlined capital letters on the first page of a contract is preempted]; but cf.

13

*Concepcion*, *supra*, 563 U.S. at pp. __, fn. 6 [131 S.Ct. at p. 1750, fn. 6] ["States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted."].)  Furthermore, we have held that even when a customer is assured it is not necessary to read a standard form contract with an arbitration clause, "it is generally unreasonable, in reliance on such assurances, to neglect to read a written contract before signing it."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 424.)

Here the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability.  Yet "a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided."  (*Gentry*, *supra*, 42 Cal.4th at p. 469.)  We now address each of Sanchez's claims of substantive unconscionability.

### A.

The arbitration agreement in this case provides that an arbitrator's award "shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel."  Valencia challenges the Court of Appeal's holding that this provision was unreasonably one-sided and unenforceable.

In *Little*, we unanimously found unconscionable an employment contract provision that permitted an appeal to a second arbitrator only if the arbitral award was greater than $50,000.  (*Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at p. 1073 (*Little*); *id.* at p. 1085 (conc. & dis. opn. of Baxter, J.); *id.* at p. 1089 (conc. & dis. opn. of Brown, J.).)  In so concluding, we discussed with approval two

14

pertinent Court of Appeal cases. In *Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 706 (*Beynon*), the court found unconscionable a provision of a mandatory arbitration agreement between a medical group and a patient that authorized the medical group, but not the patient, to reject the first arbitration award and submit the dispute to a second arbitration panel. In *Saika v. Gold* (1996) 49 Cal.App.4th 1074 (*Saika*), the court found unconscionable a provision in a doctor-patient agreement that allowed a party to request a trial de novo in superior court when the award was over $25,000. "The [*Saika*] court rejected the doctor's argument that the case was distinguishable from *Beynon* because the challenged arbitration provision permitted *either* party to request a trial de novo if the award exceeded the stated amount. '[I]n the vernacular of late 20th century America, let us "get real." As a practical matter, the benefit which the trial de novo clause confers on patients is nothing more than a chimera. The odds that an award will *both* (a) clear the $25,000 threshold but (b) *still* be so low that the *patient* would *want* to have a trial de novo are so small as to be negligible. Unless we are to assume that arbitrators in medical malpractice cases regularly and capriciously make awards substantially below what justice requires — and that is an assumption which we will not indulge — the cases where the trial de novo clause could possibly benefit the patient are going to be rare indeed.' " (*Little*, at pp. 1072–1073, quoting *Saika*, at p. 1080.)

The employer in *Little* attempted to distinguish these cases on the ground that "an arbitration appeal is less objectionable than a second arbitration, as in *Benyon*, or a trial de novo, as in *Saika*, because it is not permitting a wholly new proceeding, making the first arbitration illusory, but only permitting limited appellate review of the arbitral award." (*Little*, *supra*, 29 Cal.4th at pp. 1073–1074.) Rejecting this argument, we said: "We fail to perceive a significant

15

difference. Each of these provisions is geared toward giving the arbitral defendant a substantial opportunity to overturn a sizable arbitration award." (*Id.* at p. 1074.)

Valencia argues that the present agreement is distinguishable from *Little* in three respects. First, it provides that a party who is awarded nothing may appeal. Second, the upper threshold for an appeal is $100,000 instead of $50,000. Third, this is an auto sales agreement, not an employment contract. According to Valencia, because the purchase price of an automobile averages around $30,000, the vast majority of awards are below $100,000, in contrast to typically greater awards in employment cases. (See, e.g., *Roitz v. Coldwell Banker Residential Brothers* (1998) 62 Cal.App.4th 716, 721, 726 [upholding a $260,000 arbitral award for wrongful termination].) Thus, Valencia contends, both an award of $0 and an award greater than $100,000 are outliers in disputes between automobile buyers and sellers, so the appeal thresholds are not significantly more beneficial to the seller, who is likely to be the defendant, than to the buyer, who is likely to be the plaintiff.

We agree with Valencia that the appeal threshold provision does not, on its face, obviously favor the drafting party. Assuming, as the parties do, the likely scenario of the buyer as plaintiff and the seller as defendant, the unavailability of an appeal from an award that is greater than $0 but not greater than $100,000 means that the buyer may not appeal from a non-$0 award that he or she believes to be too small, nor may the seller appeal from a quite substantial award (up to $100,000) that it believes to be too big. It may be reasonable to assume that the ability to appeal a $0 award will favor the buyer, while the ability to appeal a $100,000 or greater award will favor the seller. But nothing in the record indicates that the latter provision is substantially more likely to be invoked than the former. We cannot say that the risks imposed on the parties are one-sided, much less unreasonably so.

16

As to the contract term providing that only arbitral grants of injunctive relief are subject to a second arbitration, Valencia notes that car sellers sometimes must seek an injunction in order to repossess a car from the buyer. But Valencia acknowledged at oral argument that overall the car buyer is more likely than the seller to seek injunctive relief. Nevertheless, we find significant Valencia's concern that the scope of an injunction can extend well beyond the transaction at issue and can compel a car seller to change its business practices. Because of the broad impact that injunctive relief may have on the car seller's business, the additional arbitral review when such relief is granted furnishes " 'a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 117.) The potentially far-reaching nature of an injunctive relief remedy, which Sanchez does not dispute, is sufficiently apparent here to justify the extra protection of additional arbitral review.

Of course, apart from the parties' particular interests, the public has a strong interest in ensuring that fraudulent business practices are enjoined. In *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1082–1084, and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 316, we held that claims seeking injunctive relief designed to protect the public by stopping ongoing practices unlawful under the CLRA and the UCL, respectively, were inarbitrable. Valencia argues that *Broughton* and *Cruz* are no longer good law in light of *Concepcion*. (See *Ferguson v. Corinthian Colleges, Inc.* (9th Cir. 2013) 733 F.3d 928, 932–937.) The Court of Appeal below did not address whether *Broughton* or *Cruz* has been abrogated, and Sanchez takes no position on the issue in this appeal, focusing instead on the asymmetry of affording arbitral appeals to grants but not denials of injunctive relief. We likewise do not address the continued viability of *Broughton* and *Cruz* in this case.

17

**B.**

The Court of Appeal also held that the provision concerning appellate arbitration filing fees and costs contributed to the unconscionability of the arbitration agreement. As noted, the arbitration clause provides that Valencia will advance the car buyer's filing, administration, service, and case management fees and arbitrator or hearing fees "up to a maximum of $2,500, which may be reimbursed" at the arbitrator's discretion. The clause also provides that in case of an appeal to a three-arbitrator panel, the appealing party "shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs." The Court of Appeal held that this latter provision is inadequate for consumers " 'who cannot afford to initiate the [appeal] process in the first place' " given large arbitration costs. "Items covered by an appeal payment made in advance include, as stated in the Sale Contract, 'the filing fee and other arbitration costs.' Arbitrator fees in Los Angeles average around $450 per hour. [Citation.])" Contrasting this arbitral scheme with the American Arbitration Association rules, which do not require consumers to front arbitration fees, the Court of Appeal concluded that "[t]he requirement that the appealing party pay the filing fee and arbitration costs of *both* parties *in advance* puts an unduly harsh burden on the buyer."

In the context of mandatory employment arbitration of unwaivable statutory rights, we have held that arbitration agreements "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th at pp. 110–111.) In the area of consumer arbitration, the Legislature has addressed costs in a different way. In 2002, shortly after *Armendariz* was decided, the Legislature enacted Code of Civil Procedure section 1284.3 to address fees and costs in consumer arbitration. Subdivision (a) of section 1284.3 provides that

18

"[n]o neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses." Most pertinently, section 1284.3, subdivision (b)(1) provides that "[a]ll fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, exclusive of arbitrator fees, shall be waived for an indigent consumer. For the purposes of this section, 'indigent consumer' means a person having a gross monthly income that is less than 300 percent of the federal poverty guidelines. Nothing in this section shall affect the ability of a private arbitration company to shift fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party." Subdivision (b)(2) requires the arbitration provider to give notice of the fee waiver provision, and subdivision (b)(3) provides that "[a]ny consumer requesting a waiver of fees or costs may establish his or her eligibility by making a declaration under oath on a form provided to the consumer by the private arbitration company for signature stating his or her monthly income and the number of persons living in his or her household. No private arbitration company may require a consumer to provide any further statement or evidence of indigence." (Code Civ. Proc., § 1284.3, subd. (b)(2) & (3).)

The legislative history shows that the statute's specific provisions were part of a general concern about the affordability of arbitration: "One of the primary arguments advanced in support of mandatory consumer arbitration is that it is less costly than civil litigation. However, this argument is cast into significant doubt by the available evidence. In fact, arbitration costs are so high that many people drop their complaints because they can't afford to pursue them, a recent study by

19

Public Citizen found." (Assem. floor analysis, Assem. Bill No. 2915 (Reg. Sess. 2001–2002) as amended Aug. 26, 2002, at p. 2.) The analysis observed that "unlike civil court, private arbitration is subject to no fee limitations. As a result, access to the system may be greatly affected by the wealth of the consumer. The author states that this bill addresses these inequities by prohibiting large private judging companies from conducting mandatory consumer arbitrations where a consumer who loses the case must pay the winning company's fees and costs. This bill also implements a fee waiver policy for indigent consumers akin to the long-standing practice in public courts. This bill does not affect commercial arbitrations between businesses." (*Ibid.*)

As noted in *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77 (*Gutierrez*), on which the Court of Appeal below relied, the Legislature in enacting Code of Civil Procedure section 1284.3 "*did not adopt* the *Armendariz* categorical approach and direct that all administrative fees be paid by nonconsumer parties without regard to the size of the costs or the wealth of the consumer. . . . [T]he Legislature *did adopt* an ability-to-pay approach, which, though limited in this statute to indigents, provides direction for a rule applicable to all consumers faced with arbitral forum fees that are prohibitively high. In *Armendariz* the court signaled its deference to the Legislature in selecting a categorical rule. (*Armendariz*, *supra*, 24 Cal.4th at pp. 112–113.) In this consumer case, that same deference leads us to adopt a case-by-case determination of affordability: plaintiffs suing under the [consumer protection] statutes may resist enforcement of an arbitration agreement that imposes unaffordable fees." (*Gutierrez*, at pp. 97–98.)

We agree with *Gutierrez*'s approach. As *Gutierrez* said in distinguishing *Armendariz*'s categorical rule in the employment context, "jobseekers are more likely to face 'particularly acute' economic pressure to sign an employment

20

contract with a predispute arbitration provision, 'for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' (*Armendariz*, *supra*, 24 Cal.4th at p. 115.) A family in search of a job confronts a very different set of burdens than one seeking a new vehicle. Consumers, who face significantly less economic pressure[,] would seem to require measurably less protection." (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 97.) In enacting Code of Civil Procedure section 1284.3, the Legislature concluded that an ability-to-pay approach is appropriate in the context of consumer arbitration agreements. Although the statute specifically addresses the affordability of consumer arbitration for people who are indigent, high arbitration fees can be unaffordable for nonindigent as well as indigent consumers, and nothing in the statute's text or legislative history precludes courts from using unconscionability doctrine on a case-by-case basis to protect nonindigent consumers against fees that unreasonably limit access to arbitration. (See *Sonic II*, *supra*, 57 Cal.4th at p. 1145 [endorsing *Gutierrez*'s view that unaffordable arbitration costs that "effectively blocks every forum for the redress of disputes" may render an arbitration agreement unconscionable].)

In the present case, the arbitration agreement did not have to provide for an appeal. But having done so, the agreement may not structure the appeal process so that it unreasonably favors one party, just as the agreement may not authorize only one party and not the other to take an appeal. (*Little*, *supra*, 29 Cal.4th at pp. 1073–1074.) We agree with the Court of Appeal below that a requirement that a consumer front any appellate filing fees or other arbitration costs — recall that an appeal here requires not one but three arbitrators — has the potential to deter the consumer from using the appeal process. But given the Legislature's approach to the affordability of consumer arbitration, the provision cannot be held unconscionable absent a showing that appellate fees and costs in fact would be

21

unaffordable or would have a substantial deterrent effect in Sanchez's case. (See *Gutierrez*, *supra*, 114 Cal.App.4th at pp. 90–91.)

Moreover, courts are required to determine the unconscionability of the contract "at the time it was made." (Civ. Code, § 1670.5.) In light of this requirement, we recently clarified the proper affordability inquiry in *Sonic II* in the context of employment arbitration: "Because a predispute arbitration agreement is an agreement to settle future disputes by arbitration, the proper inquiry is what dispute resolution mechanism the parties reasonably expected the employee to be able to afford. Absent unforeseeable (and thus not reasonably expected) circumstances, there is no reason to think that what an employee can afford when a wage dispute arises will materially differ from the parties' understanding of what the employee could afford at the time of entering the agreement." (*Sonic II*, *supra*, 57 Cal.4th at p. 1164.) The same principle applies to consumer arbitration.

Justice Chin says *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. __, __–__ [133 S.Ct. 2304, 2310–2311] (*Italian Colors*) entails that "if a cost provision does not impose fees that 'make access to the forum impracticable' [citation], then the FAA precludes a court from invalidating it as unconscionable because of a subjective determination that it will, in a particular case, 'have a substantial deterrent effect' on a party's exercise of the right to request a second arbitration." (Conc. & dis. opn., *post*, at pp. 23–24.) But it is not clear that the notion of "impracticab[ility]" mentioned in passing in *Italian Colors* (*Italian Colors*, at p. __ [133 S.Ct. at p. 2311]) differs from "a substantial deterrent effect" (*ante*, at p. 21). In any event, we explained in *Sonic II* that *Italian Colors* reaffirmed the principle stated in *Concepcion* that "[w]here a state-law rule interferes with fundamental attributes of arbitration, the FAA preempts the state-law rule even if the rule is designed to facilitate prosecution of certain kinds of claims." (*Sonic II*, *supra*, 57 Cal.4th at p. 1157.) Neither *Concepcion* nor *Italian*

22

*Colors* precludes states from ensuring, through rules that do *not* interfere with arbitration's fundamental attributes, that the arbitral scheme set forth in a contract is in practice "an accessible, affordable process for resolving . . . disputes." (*Sonic II*, at p. 1158.)

The dispute in this case concerns a high-end luxury item. Sanchez does not claim, and no evidence in the record suggests, that the cost of appellate arbitration filing fees were unaffordable for him, such that it would thwart his ability to take an appeal in the limited circumstances where such appeal is available. We therefore conclude on the record before us that the arbitral appeal fee provision is not unconscionable.

## C.

The arbitration agreement further provides: "You and we retain any rights to self-help remedies, such as repossession." The Court of Appeal held that this provision also contributed to the unconscionability of the arbitration agreement. We disagree.

The Court of Appeal explained its conclusion as follows: "By exempting repossession — to which only the car dealer would resort — from arbitration, while subjecting a request for injunctive relief — the buyer's comparable remedy — to arbitration, the Sale Contract creates an unduly oppressive distinction in remedies. This is especially so given that the California Arbitration Act (Code Civ. Proc., §§ 1280–1294.2) exempts preliminary injunctions from arbitration, allowing an application for 'provisional' remedies to be filed directly in court (*id.*, § 1281.8, subd. (b)). Nevertheless, the Sale Contract dictates otherwise. As several courts have held, arbitration provisions are unconscionable if they provide for the arbitration of claims most likely to be brought by the weaker party but exempt from arbitration claims most likely to be filed by the stronger party."

23

As an initial matter, the arbitration agreement does not appear to preclude provisional injunctive relief authorized by statute. Code of Civil Procedure section 1281.8, subdivisions (a) and (b) authorize a court to issue before arbitration "a provisional remedy . . . upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." Although the arbitration agreement in the present case provides that the arbitration is to be governed by the FAA and not California law, generally the California Arbitration Act governs arbitral procedures brought in California courts. (See *Cronus Investments, Inc. v. Concert Services* (2005) 35 Cal.4th 376, 389–390.) Even if FAA procedures apply, federal courts have concluded that a court may "issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process." (*Toyo Tire Holdings v. Continental Tire North Amer.* (9th Cir. 2010) 609 F.3d 975, 981, and cases cited therein.) Regardless of whether an arbitration agreement could deprive a court of the power to grant preliminary injunctive relief, the present agreement does not do so. It addresses injunctive relief in connection with the relief granted by the arbitrator, subjecting such a remedy to review by a panel of three arbitrators. The agreement does not purport to limit a court's power to issue preliminary injunctive relief to preserve the status quo pending a final judgment.

Moreover, we see nothing unconscionable about exempting the self-help remedy of repossession from arbitration. First, although this remedy is favorable to the drafting party, the contract provision that preserves the ability of the parties to go to small claims court likely favors the car buyer. Second, arbitration is intended as an alternative to litigation, and the unconscionability of an arbitration agreement is viewed in the context of the rights and remedies that otherwise would have been available to the parties. (See *Sonic II*, *supra*, 57 Cal.4th at pp. 1146–1148.) Self-help remedies are, by definition, sought outside of litigation, and they

24

are expressly authorized by statute.  Commercial Code section 9609, subdivisions (a)(1) and (b)(2) authorize a secured creditor "[a]fter default" to "[t]ake possession of the collateral" "[w]ithout judicial process, if it proceeds without breach of the peace."  Civil Code sections 2983.2 and 2983.3 set forth the requirements for post-repossession notice and opportunity to cure default in the case of automobile loans.  Moreover, it is undisputed that the remedy of repossession of collateral is an integral part of the business of selling automobiles on credit and fulfills a " 'legitimate commercial need.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 117.)  We thus conclude that the exclusion of such a remedy from an arbitration agreement, while favorable to Valencia, is not unconscionable.

## IV.

The trial court held, prior to *Concepcion*, that the class waiver was unconscionable and invalidated the entire arbitration agreement based on a poison pill provision that said:  "If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable."  The Court of Appeal, deciding the case after *Concepcion*, took no position on the enforceability of the class waiver.  Sanchez now advances several arguments for why the trial court's decision was correct, but none is persuasive.

In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, we announced a rule that class arbitration waivers in consumer contracts are unconscionable when they are found "in a setting in which disputes between the contracting parties predictably involve small amounts of damages and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." (*Id.* at pp. 162–163.)  This rule was abrogated by *Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1753]; see *Sonic II*, *supra*, 57 Cal.4th at pp. 1137–1139.)  As

25

noted, the imposition of class action arbitration or litigation interferes "with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1748].) To find the class waiver here unconscionable would run afoul of *Concepcion*.

Sanchez correctly notes that the CLRA sets forth a number of unwaivable rights, including the right to a class action. The anti-waiver provision is found in Civil Code section 1751: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Civil Code section 1780 permits the consumer damaged by certain enumerated practices to seek various remedies including damages and injunctive relief. Civil Code section 1781, subdivision (a) provides: "Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780." Thus, class actions are among the provisions of the CLRA that may not be waived. (See *Fisher v. DCH Temecula Imports LLC* (2010) 187 Cal.App.4th 601, 613.)

Nonetheless, *Concepcion*'s rule that states may not require a procedure that interferes with fundamental attributes of arbitration, "even if it is desirable for unrelated reasons" (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1753]), applies equally to requirements imposed by statute or judicial rule. We conclude that the CLRA's anti-waiver provision is preempted insofar as it bars class waivers in arbitration agreements covered by the FAA. Sanchez's argument that enforcing the CLRA's anti-waiver provision merely puts arbitration agreements on an equal footing with other contracts is unavailing. *Concepcion* held that a state rule can be preempted not only when it facially discriminates against arbitration but also when it disfavors arbitration as applied. (*Concepcion*, *supra*, 563 U.S. at p. __ [131

26

S.Ct. at pp. 1747].) *Concepcion* further held that a state rule invalidating class waivers interferes with arbitration's fundamental attributes of speed and efficiency, and thus disfavors arbitration as a practical matter. (*Id.* at pp. 1750–1753.)

Finally, Sanchez contends that the language of the arbitration agreement — "If a waiver of class action rights is deemed or found to be unenforceable *for any reason . . .* , the remainder of this Arbitration Clause shall be unenforceable" — means that once a class action waiver is deemed unenforceable, as the trial court ruled here, then the rest of the agreement is likewise unenforceable. But plainly the quoted provision was not meant to apply when a trial court *erroneously* holds the class waiver unenforceable and the error is corrected on appeal. Rather, the provision is most reasonably interpreted to permit the parties to choose class litigation over class arbitration in the event that the class waiver turns out to be legally invalid. Because we conclude in light of *Concepcion* that the FAA preempts the trial court's invalidation of the class waiver on unconscionability grounds, the agreement's poison pill provision is inoperable.

CONCLUSION

The judgment of the Court of Appeal is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

**LIU, J.**

**WE CONCUR:**

  **CANTIL-SAKAUYE, C. J.**
  **WERDEGAR, J.**
  **CORRIGAN, J.**
  **CUÉLLAR, J.**
  **KRUGER, J.**

**CONCURRING AND DISSENTING OPINION BY CHIN, J.**


I agree with the majority that, under the high court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*), the Federal Arbitration Act (FAA) requires enforcement of the class arbitration waiver in the contract between plaintiff Gil Sanchez and defendant Valencia Holding Company, LLC (Valencia). I also agree with the majority that Sanchez has failed to carry his burden of establishing that the arbitration agreement in that contract is unconscionable. However, as explained below, my analysis of these issues differs from the majority's in several respects, and I do not endorse all of the majority's reasoning. Therefore, I concur only in the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2008, Sanchez went to Valencia's Mercedes-Benz dealership to shop for a certified preowned car. In response to his inquiry, a sales representative showed him a 2006 Mercedes-Benz S500V with an advertised price of approximately $48,000. After negotiations regarding various terms of the purchase, Sanchez signed a contract entitled "RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE," which specified the total amount financed as $47,032.99. This amount included a price for the car of approximately $39,800, sales tax of approximately $3,330, a service contract price of $3,700, a cash down payment of $15,000, and a net trade-in amount for

1

Sanchez's 2004 Cadillac of -$14,800 (reflecting the amount Sanchez still owed on the car ($20,800) offset by its value ($6,000)).

Sanchez later filed a class action against Valencia asserting violations of the Consumer Legal Remedies Act (CLRA) (Civ. Code, §§ 1750–1784), the Automobile Sales Finance Act (Civ. Code, §§ 2981–2984.6), the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200–17210), the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790–1795.8), and Public Resources Code section 42885. He alleged that Valencia had (1) made false representations about the car's condition, (2) failed separately to itemize the amount of the down payment that was deferred, (3) failed to distinguish registration, transfer, and titling fees from license fees, (4) charged an optional electronic filing fee without discussing it with him, (5) charged new tire fees for used tires, and (6) required payment of $3,700 to have the car certified so he could qualify for a 4.99 percent interest rate, when that payment was actually for an optional extended warranty unrelated to the interest rate.

Valencia moved to compel arbitration pursuant to a provision in the contract that provided in relevant part: "Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action."

Sanchez opposed the motion, principally asserting that the arbitration provision was illegal and unenforceable insofar as it required him "to waive his unwaivable right to file a class action under the CLRA." The unenforceability of this waiver, he argued, rendered the entire arbitration agreement unenforceable under a clause stating, "If a waiver of class action rights is deemed or found to be

2

unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable."  As an alternative ground for opposing the motion, Sanchez argued that the arbitration agreement was unenforceable because it was "*both procedurally and substantively unconscionable*."

Based solely on the invalidity of the class arbitration waiver, the trial court denied the motion to compel, explaining:  "As the CLRA contains a right to bring class actions, a waiver of such right is contrary to public policy and is unenforceable.  [Citation.]  Thus, the class action waiver herein is unenforceable.  As such, the entire clause is unenforceable, as specifically provided for in that clause."  The trial court did not address Sanchez's unconscionability claim.

The Court of Appeal affirmed, but took the opposite approach, i.e., it declined to consider whether the class arbitration waiver was unenforceable and held instead that "the arbitration clause as a whole is unconscionable."  It is "procedurally unconscionable," the court reasoned, "because it is adhesive and satisfies the elements of oppression and surprise; it is substantively unconscionable because it contains harsh terms that are one-sided in favor of the car dealer to the detriment of the buyer."  "First, a party who loses before the single arbitrator may appeal to a panel of three arbitrators if the award exceeds $100,000.  Second, an appeal is permitted if the award includes injunctive relief.  Third, the appealing party must pay, in advance, 'the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.'  Fourth, the provision exempts repossession from arbitration while requiring that a request for injunctive relief be submitted to arbitration.  Although these provisions may appear neutral on their face, they have the effect of placing an unduly oppressive burden on the buyer."

3

DISCUSSION

## I.  The FAA Requires Enforcement of the Class Arbitration Waiver.

In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 161 (*Discover Bank*), a four-to-three majority of this court held that certain waivers of classwide arbitration procedures are unconscionable and unenforceable because they "may operate effectively as exculpatory contract clauses that are contrary to public policy."  This rule, the *Discover Bank* majority concluded, is not preempted by the FAA because (1) enforcement of arbitration provisions under the FAA "is limited by certain general contract principles ' "at law or in equity for the revocation of any contract" ' " (*id.* at p. 163), and (2) "the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally," i.e., "it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements" (*id.* at pp. 165-166).  The *Discover Bank* majority found "[n]othing in" the high court's decisions "suggest[ing] that state courts are obliged to enforce contractual terms even if those terms are found to be unconscionable or contrary to public policy under general contract law principles."  (*Id.* at p. 166.)  In other words, the *Discover Bank* majority declared, "the FAA does not federalize the law of unconscionability or related contract defenses except to the extent that it forbids the use of such defenses to discriminate against arbitration clauses."  (*Id.* at p. 167.)

In *Concepcion*, the high court rejected the *Discover Bank* majority's preemption analysis and held that the FAA does, in fact, preempt *Discover Bank*'s rule against enforcement, on grounds of unconscionability, of class arbitration waivers.  (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1753].)  The court explained that, under certain circumstances, the FAA's preemptive effect

4

"extend[s] even to grounds" "normally thought to be generally applicable, such as . . . unconscionability." (*Id.* at p. __ [131 S.Ct. at p. 1747].) The FAA preempts such "generally applicable contract defenses" if they "stand as an obstacle to the accomplishment of the FAA's objectives." (*Id.* at p. __ [131 S.Ct. at p. 1748].) The *Discover Bank* rule stands as such an obstacle for two reasons. First, it contravenes the FAA's " 'principal purpose,' " which "is to 'ensur[e] that private arbitration agreements are enforced *according to their terms*.' [Citations.]" (*Id.* at p. __ [131 S.Ct. at p. 1748], italics added.) Second, it frustrates the FAA's goal of encouraging "efficient, streamlined," speedy procedures. (*Id.* at p. __ [131 S.Ct. at p. 1749].) Because, in these respects, the *Discover Bank* rule " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " the FAA preempts it. (*Id.* at p. __ [131 S.Ct. at p. 1753].) As the majority explains, under *Concepcion,* the FAA "requires enforcement" of the class arbitration waiver at issue in this case. (Maj. opn., *ante*, at p. 2.)

Although I also agree with the majority that, under *Concepcion*, unconscionability remains a valid defense to a petition to compel arbitration (maj. opn., *ante*, at p. 11), I do not subscribe to the majority's broad dictum that *Concepcion* "does not limit the unconscionability rules applicable to other provisions of the arbitration agreement" (maj. opn., *ante*, at p. 2). Indeed, as the majority later explains, under *Concepcion*, in order to avoid FAA preemption, our standard for unconscionability "must be[] the same for arbitration and nonarbitration agreements." (Maj. opn., *ante*, at p. 10.) In other words, "the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause. In particular, the standard for substantive unconscionability . . . must be as rigorous and demanding for arbitration clauses as for any contract clause." (*Ibid*.) Moreover, *Concepcion* declares that, although "[s]tates remain free to take steps addressing the concerns that attend contracts of adhesion," those steps "cannot . . . conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced

5

according to their terms." (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1750], fn. 6.) *Concepcion* also declares that "[w]hen state law prohibits outright the arbitration of a particular type of claim," the state law "is displaced by the FAA." (*Id.* at p. __ [131 S.Ct. at p. 1747].) The high court has subsequently made clear that this principle precludes courts from basing a finding of unconscionability on a state rule that precludes, as a matter of state public policy, arbitration of certain types of claims. (*Marmet Health Care Center Inc. v. Brown* (2012) __ U.S. __, __ [132 S.Ct. 1201, 1204].) These general principles from *Concepcion* do, in fact, "limit the unconscionability rules applicable to" provisions of arbitration agreements other than class arbitration waivers. (Maj. opn., *ante*, at p. 2.)

## II. Sanchez Has Not Established Unconscionability.

Unconscionability has both a procedural and substantive element, and the party asserting the defense bears the burden of proving both by a preponderance of the evidence. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246-247 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).) Below, I explain my reasons for agreeing with the majority that Sanchez has failed to establish substantive unconscionability. Before that, I explain why I do not endorse the majority's discussion of procedural unconscionability.

### 1. We need not decide, and the record fails to establish, procedural unconscionability.

Initially, it is both unnecessary and, on the state of the record here, improper under our case law to decide that the agreement was procedurally unconscionable. It is unnecessary given the majority's conclusion, with which I agree, that the arbitration provision is *not* substantively unconscionable. (Maj. opn., *ante*, at p. 2.) Because, as explained above, a showing of both procedural

6

and substantive unconscionability is required to render a contract unenforceable, a contract that is not substantively unconscionable is fully enforceable regardless of procedural unconscionability.  Given our unanimous conclusion regarding substantive unconscionability, "adherence to judicial restraint and economy counsels against an unnecessary detour into an analysis" of procedural unconscionability.  (*People v. Mosley* (2015) 60 Cal.4th 1044, 1055, fn. 7; see *Brown v. Wells Fargo Bank, NA* (2008) 168 Cal.App.4th 938, 956 [declining to consider procedural unconscionability given finding of no substantive unconscionability]; *Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1167 (*Crippen*) [declining to consider substantive unconscionability given finding of no procedural unconscionability].)

It is improper to decide the issue because, as explained earlier, the trial court made no findings regarding unconscionability and denied Valencia's motion to compel based solely on its conclusion that the class arbitration waiver constituted an illegal and unenforceable waiver of Sanchez's "unwaivable right to file a class action under the CLRA."  Thus, the trial court has never resolved factual conflicts that must be resolved in Sanchez's favor in order to warrant a finding of procedural unconscionability (discussed *post*).  Our decisions establish that where a trial court fails to resolve factual conflicts that must be resolved in favor of a party who alleges that an arbitration provision is unenforceable, the proper course for an appellate court is to remand the case to the trial court to determine those factual issues, not to determine them itself in the first instance. (*Engalla*, *supra*, 15 Cal.4th at pp. 972-973; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 414.)  Under these decisions, were a finding on procedural unconscionability necessary, the majority should remand for the trial court to consider the issue rather than resolve it in Sanchez's favor in the first instance on appeal.  The majority offers no explanation for departing from our precedents.

On the merits, the majority's summary dicta is incomplete and unpersuasive. The only basis the majority offers for finding "some degree of procedural unconscionability" is the "adhesive nature of the contract."[1] (Maj. opn., *ante*, at p. 14.) But the majority offers no independent legal analysis for establishing that the contract was adhesive, asserting instead that "Valencia does not dispute that the contract was adhesive." (*Id.* at p. 12.) It is true that Valencia's counsel stated at oral argument that the contract was "adhesive in the sense that it is . . . a form contract." But the circumstance that a contract is "standardized in form" does not *alone* establish adhesiveness. (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 (*Izzi*); see *Federico v. Frick* (1970) 3 Cal.App.3d 872, 875 ["nothing in the record provid[es] evidentiary support for th[e] conclusion" that "[t]he standard union employment contract before us" is "a contract of adhesion"].) The additional characteristics of adhesiveness are that the contract was drafted and imposed " 'by the party of superior bargaining strength' " (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817) " 'on essentially a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 743 (*Victoria*)).

At all levels of this litigation, Valencia clearly *has* disputed whether Sanchez has met his burden to prove by a preponderance of the evidence that these additional characteristics of adhesiveness are present. In the Court of Appeal,

---

**1** The majority states that "Sanchez apparently did not read the entirety of his contract, including the arbitration clause" (maj. opn., *ante*, at p. 13), but it does not conclude that this circumstance contributes to a finding of procedural unconscionability. I agree. As the majority explains, "even where a customer is assured it is not necessary to read a standard form contract with an arbitration clause, 'it is generally unreasonable, in reliance on such assurances, to neglect to read a written contract before signing it.' " (*Id.* at p. 14.)

8

Valencia argued that the contract, although "a pre-printed form contract," was "not a contract of adhesion" and that, as relevant to this issue, Sanchez had failed to show that he "had no realistic choice," that he could not have "negotiate[d] a contract term" had he attempted to do so, that "he was under any compulsion to finalize the purchase of a vehicle at any particular point in time," that the car "was unique," or that he could not have purchased it without agreeing to arbitration from either a private individual or from one of the other five Mercedes-Benz dealers "[w]ithin 25 miles of" Valencia. Valencia made the same arguments in the trial court` and asserted in its opening brief in this court that Sanchez had failed to satisfy his "burden of proof" because he "made no showing that he could not negotiate the arbitration provision or that he lacked other alternatives, such as going to another dealer." Thus, the record reflects that Valencia does, in fact, "dispute that the contract was adhesive" and that, as part of its argument, has emphasized both in the lower courts and "in this court" Sanchez's failure to show he could not "have opted out of the arbitration agreement" or "negotiated a sales contract without an arbitration agreement."**2** (Maj. opn., *ante*, at p. 12.)

Indeed, the majority's discussion overlooks the legal significance of the fact that the burden of proof was *on Sanchez* to establish procedural unconscionability. Valencia's asserted failure to "dispute" the contract's adhesive nature or to "contend in this court" that Sanchez could have obtained the car without accepting the arbitration agreement (maj. opn., *ante*, at p. 12), even if consistent with the record, does not substitute for *evidence* that satisfies *Sanchez's burden* to establish procedural unconscionability. This is especially true given the

---

**2**      After stating at oral argument that the contract was "adhesive in the sense that it is . . . a form contract," Valencia's counsel added:  "I think that meets the definition of adhesive in California.  But I think adhesive without more does not get . . . one unconscionability."  Unlike the majority (see maj. opn., *ante*, at p. 12), I do not, in the context of the entire record, view these additional statements as a basis for dispensing with a proper and complete analysis of adhesiveness.

9

procedural posture of this case, i.e., the trial court made no findings regarding unconscionability, and the majority is deciding the issue on appeal in the first instance.

The majority also overlooks the fact that case law strongly supports Valencia's arguments. In *Crippen*, *supra*, 124 Cal.App.4th at page 1165, the Court of Appeal, in ordering enforcement of an arbitration agreement between a dealer and the purchaser of a motor home, rejected the argument that the agreement was "a contract of adhesion and therefore procedurally unconscionable" simply "because [it] was a form contract [the dealer] used with many customers." The court explained: "[T]here is no general rule that a form contract used by a party for many transactions is procedurally unconscionable. Rather, '[p]rocedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position. . . . There is no reason in this case to conclude that plaintiff lacked power to bargain. In general, nothing prevents purchasers of . . . vehicles from bargaining with dealers, even though dealers use form contracts, and nothing in the record shows that plaintiff could not bargain in this case." (*Id.* at pp. 1165-1166.) "There is nothing in this buyer-seller relationship from which we can infer a great disparity of bargaining power." (*Id.* at p. 1166; cf. *Izzi*, *supra*, 186 Cal.App.3d at p. 1318 [although the contract was standardized, "no presumption is warranted that plaintiffs had no choice or power to negotiate as to the terms of their purchase agreement or that they could not obtain comparable or superior terms on a suitable condominium nearby"] .)

Indeed, the record here is consistent with the analysis in *Crippen* and supports Valencia's arguments. It indicates that Sanchez had significant financial means when he signed the contract, which is the relevant time for judging unconscionability (Civ. Code, § 1670.5, subd. (a)). He contracted to pay nearly $50,000 for a luxury automobile for personal use, traded in a relatively new (four-year old) luxury automobile as part of the purchase and, at the time he signed the

10

contract, wrote a $10,000 check for the down payment and agreed to put down more money within 30 days if necessary.  Over the course of the next week, he returned to Valencia and increased his down payment by $5,000, for a total of $15,000.  The record also shows that Sanchez actually bargained for a substantial reduction in the car's purchase price.  Finally, the record contains evidence — submitted by Sanchez — that, during the time period when he executed the contract, contracts without an arbitration provision were available to Valencia's buyers; that Valencia had not used contracts with arbitration clauses since August 29, 2008, a few weeks after Sanchez signed the contract; and that Valencia no longer uses contracts with arbitration clauses.  Thus, the record fails to show that Sanchez lacked bargaining power or that he could not have obtained the car, either from Valencia or elsewhere, " 'except by acquiescing in the form contract.' " (*Victoria*, *supra*, 40 Cal.3d at p. 743.)

The majority's response to my analysis — that "in the context of consumer contracts, we have never *required*" a party asserting procedural unconscionability to "show it tried to negotiate standardized contract provisions" (maj. opn., *ante*, at pp. 12-13, italics added) — is unpersuasive.  Although we may never have *required* such proof, we *have* expressly stated that "freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470.)  Notably, the decision we cited in support of this statement — *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758 — involved "the context of consumer contracts" (maj. opn., *ante*, at p. 12), a circumstance we expressly acknowledged in our explanation of that decision:  "agreement between brokerage house and sophisticated *consumer* of financial services that included a $50 termination fee on an IRA account was not unconscionable where competing IRA's without the challenged fee were freely available." (*Gentry*, *supra*, at p. 470, italics added.)

Indeed, *Discover Bank*, which the majority cites in support of its response, actually confirms the validity of this principle "in the context of consumer contracts." (Maj. opn., *ante*, at p. 12.)  There, a majority of this court stated that "when a consumer is given an amendment to its cardholder agreement in the form of a 'bill stuffer' that he would be deemed to accept if he did not close his account, an element of procedural unconscionability is present." (*Discover Bank*, *supra*, 36 Cal.4th at p. 160.)  In making this statement, we relied on *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094.  There, consistent with our precedents, the Court of Appeal stated that "[t]he availability of similar goods or services elsewhere may be relevant to whether the contract is one of adhesion . . . ." (*Id.* at p. 1100.)  The court then explained that, on "the [particular] facts in the case," this was "not the deciding factor" because of the "oppressive" manner in which the defendant had "imposed" the arbitration provision; *the record showed* that the consumer, who already had a "Cardholder Agreement" with the defendant, subsequently "received" an "amendment" imposing the arbitration provision "in a bill stuffer" and "was told to 'take it or leave it.'  His only option, if he did not wish to accept the amendment, was to close his account." (*Ibid*.)  The facts in *Discover Bank* were virtually identical. (*Discover Bank*, *supra*, at pp. 153-154.)  The facts in this case are completely different.  Thus, although *Discover Bank* is factually distinguishable, legally, it *confirms* that Sanchez's failure to show he was unable to obtain the car from Valencia or elsewhere without agreeing to arbitration is an important factor in determining procedural unconscionability.

Even more supportive of this conclusion is the other decision the majority cites in support of its response:  *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913. (Maj. opn., *ante*, at p. 13.)  There, we considered the legal sufficiency of the plaintiff's claim that the fee the defendant bank charged customers for returned checks was unconscionable. (*Perdue*, *supra*, 38 Cal.3d at pp. 920-921.)  In addressing this question, we first reaffirmed the principle that the determination of procedural unconscionability "may turn on the absence of meaningful choice."

(*Id.* at p. 927.)  In holding that the plaintiff had sufficiently stated a claim for relief, we then stressed that he had "*alleged . . . that similar arrangements would be imposed by other banks.*"  (*Id.* at p. 927, fn. 12, italics added.)  This "allegation[]," we explained, rendered "distinguish[able]" a decision in which a court had "reject[ed]" a similar unconscionability claim because of the plaintiffs' " 'fail[ure] to show that they were deprived of a meaningful choice of banks with which they could do business.' "  (*Ibid.*)  Thus, like *Discover Bank*, *Perdue* confirms the significance of Sanchez's failure to show (or even allege) that he either tried to negotiate with Valencia or could not have obtained a similar car elsewhere without agreeing to arbitration.

Consistent with these precedents, our Courts of Appeal have, in rejecting claims of adhesiveness, relied in part on the absence of evidence that the complaining parties tried to negotiate the terms they were seeking to invalidate. (*Spinello v. Amblin Entertainment* (1994) 29 Cal.App.4th 1390, 1397; *Union Bank v. Ross* (1976) 54 Cal.App.3d 290, 296 (*Union Bank*).)  Thus, under existing California case law, Sanchez's failure to show that he "tried to negotiate" the arbitration provisions (maj. opn., *ante*, at p. 13) is an important factor in determining whether he has established adhesivenesss.  The majority's contrary view, which is not supported by our precedents, effectively disapproves these decisions.

I also disagree with the majority that the statements of Valencia's counsel at oral argument regarding the clarity of the contract are relevant.  (Maj. opn., *ante*, at p.  12.)  Counsel stated:  "I think many people who are not legally trained don't understand the vast majority of what is in this contract.  My guess is that if you asked that dealer about everything other than the negotiable terms of price and interest they probably don't understand that either, even though that language is required by statute."  Unlike the majority, I would not rely on counsel's "guess" about these matters, which lacks any evidentiary support in the record.  Indeed, the contract here clearly provided for arbitration of "[a]ny claim or dispute . . .

13

between" Sanchez and Valencia, and there is no reason Sanchez would have been unable to understand this *had he read the contract*. Moreover, if, as the majority asserts, Sanchez "did not read" the contract (see maj. opn., *ante*, at p. 13), then under existing case law, he "may not," in asserting adhesiveness, "properly argue that he did not give an 'understanding consent.' " (*Union Bank*, *supra*, 54 Cal.App.3d at p. 296.) Finally, "[t]he general rule" in California, established now for over 100 years, "is that, when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding." (*Smith v. Occidental etc. Steamship* (1893) 99 Cal. 462, 470-71.) For these reasons, the majority's reliance on counsel's "guess" during oral argument is misplaced.

In any event, our prior decisions establish that adhesiveness does not alone necessarily establish procedural unconscionability. In *Pinnacle*, the trial court, on grounds of unconscionability, refused to enforce against a condominium homeowners association an arbitration provision in the condominium's covenants, conditions, and restrictions (CC&R's). (*Pinnacle*, *supra*, 55 Cal.4th at p. 234.) It based a finding of procedural unconscionability on the fact that "the [a]ssociation had no opportunity to participate in the drafting of" the CC&R's because they were recorded "before the [a]ssociation was formed." (*Id.* at p. 247.) We disagreed with the trial court's conclusion, explaining: "That the . . . CC&R's were drafted and recorded before the sale of any unit and without input from the [a]ssociation was a circumstance dictated by the legislative policy choices embodied in the Davis–Stirling Act. . . . Thus, *while a condominium declaration may perhaps be viewed as adhesive*, a developer's procedural compliance with the Davis–Stirling Act provides a sufficient basis for rejecting an association's claim of procedural unconscionability." (*Id.* at pp. 247-248, italics added, fn. omitted.) Here, Valencia asserts — and Sanchez does not dispute — "that over 90% of the contract is statutorily dictated in both form and content" by the Automobile Sales

Finance Act (Civ. Code, § 2981 et seq.).  Therefore, as Valencia argues, under *Pinnacle*, the contract is not procedurally unconscionable even if it could "be viewed as adhesive."  (*Pinnacle*, *supra*, at p. 248.)  This conclusion does not, as the majority suggests, depend on whether the arbitration agreement "was mandated by statute" (maj. opn., *ante*, at p. 13), because the arbitration agreement in *Pinnacle* was *not* statutorily required (*Pinnacle*, *supra*, at pp. 235-242; see *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1320 ["adhesion contracts" are "not always" procedurally unconscionable]).

California has a "strong public policy in favor of enforcing arbitration agreements."  (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1073.)  "In keeping with [this] strong public policy . . . , any doubts regarding the validity of an arbitration agreement [must be] resolved in favor of arbitration."  (*Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1144; *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821.)  Consistent with these principles, were it either necessary or appropriate to decide the issue, I would, for the reasons set forth above, find that Sanchez has failed to prove adhesiveness that supports a finding of procedural unconscionability.

### 2.  Sanchez has not established substantive unconscionability.

"Civil Code section 1670.5, subdivision (a), authorizes a court, upon finding 'as a matter of law' that a 'contract or any clause of the contract' was 'unconscionable at the time it was made,' to 'refuse to enforce the contract,' to 'enforce the remainder of the contract without the unconscionable clause,' or to 'so limit the application of any unconscionable clause as to avoid any unconscionable result.'  The official Assembly comment accompanying this section explains:  'The basic test [of unconscionability] is whether, in the light of the general background and the needs of the particular case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of prevention of

15

oppression and unfair surprise [citation] and not of disturbance of allocation of risks because of superior bargaining power.' (Rep. on Assem. Bill No. 510 (1979–1980 Reg. Sess.) 5 Assem. J. (1979–1980 Reg. Sess.) p. 9231, reprinted as Legis. Com. com., 9 West's Ann. Civ. Code (2011 ed.) p. 74 (Official Comment).)" (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1176 (conc. & dis. opn. of Chin, J.) (commonly known as *Sonic II*).)

Consistent with these legislative pronouncements, in *Pinnacle*, we recently explained that "[a] contract term," including an arbitration provision, "is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) The " ' "shock the conscience" ' " standard we applied in *Pinnacle* is the standard this court has been applying for well over 100 years. (E.g., *Herbert v. Lankershim* (1937) 9 Cal.2d 409, 475 [inadequacy of consideration must be " 'so gross as to shock the conscience and common sense of all men' "]; *Boyce v. Fisk* (1895) 110 Cal. 107, 116 [contract must be " 'grossly against conscience,' " and " 'the mere fact that the bargain is a very hard or unreasonable one is not generally sufficient' "]; see also *Tarver v. State Bar* (1984) 37 Cal.3d 122, 134 [test for whether an attorney's fee is unconscionable is whether it is " ' " 'so exorbitant and wholly disproportionate to the services performed as to shock the conscience' " ' "].) It is "derivative of the term 'unconscionable.' " (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 215.) It is the standard we should continue to apply. I thus agree with the majority's discussion insofar as it reaffirms the validity of the shock the conscience standard. (Maj. opn., *ante*, at pp. 8-9.)

However, I part company with the majority insofar as it continues to endorse several alternative formulations for substantive unconscionability. i.e., overly harsh, unduly oppressive, unfairly one-sided. (Maj. opn., *ante*, at pp.8-9.) As the majority observes, this court has sometimes used these formulations instead of the shock the conscience standard. (*Ibid*.) This practice has generated

16

confusion and uncertainty, because our lower courts have understood these different formulations as stating a lower standard for substantive unconscionability than "shock the conscience." (*Sonic II*, *supra*, 57 Cal.4th at p. 1178 (conc. & dis. opn. of Chin, J.) ["our Courts of Appeal have consistently recognized [that] shock the conscience is not . . . 'synonymous with "unreasonable" ' "]; *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1469 [shock the conscience is " 'a higher standard' " than one-sided or overly harsh]; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88 (*Gutierrez*) [same].) Today, the majority declares that these alternative formulations "all mean the same thing" as "shock the conscience." (Maj. opn., *ante*, at p. 9.) If that is true, then why not settle on the traditional "shock the conscience" test as the single formulation? Why perpetuate the uncertainty that arises from having multiple formulations?

The majority's only answer — that adopting "shock the conscience" as the sole formulation somehow "would call into question" decisions in which we have used "other formulations" (maj. opn., ante, at p. 12) — is unpersuasive. If, as the majority states, those other formulations are not conceptually or practically different from, and mean the same thing as, "shock the conscience" (*id*. at pp. 8-9), then why would adopting a single standard call any of our prior decisions into question? We could simply make clear that we are clarifying the law, without suggesting that our earlier cases were wrongly decided.

Moreover, maintaining multiple formulations is problematic for several reasons. First, although, as the majority recognizes, "[c]ommerce depends on the enforceability, in most instances, of a duly executed, written contract" (maj. opn., *ante*, at p. 9), it also depends on "certainty and predictability" of enforcement (*Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1269.) As we have explained, "[p]arties enter into contracts to allocate risks and to bring certainty, order, and predictability to their mutual relations. One of the principal aims of contract law is to assist contracting parties in achieving this objective by making the outcome of legal disputes clear and predictable." (*Nedlloyd Lines B.V. v.*

17

*Superior Court* (1992) 3 Cal.4th 459, 494.)  Having multiple formulations for determining whether a contract is substantively unconscionable, and therefore unenforceable, undermines the certainty and predictability that are vital to commerce.

Second, the need for a uniform standard is crucial in light of the FAA.  As already explained, the FAA *requires* that our standard for unconscionability be "the same for arbitration and nonarbitration agreements," i.e., that it be "as rigorous and demanding for arbitration clauses as for any contract clause."  (Maj. opn., *ante*, at p. 10.)  However, as Valencia argues, "[i]f there are multiple unconscionability standards, then arbitration provisions may well be subjected, in practice, to a different standard than other contract provisions."  Indeed, this court first articulated the "unfairly one-sided" formulation specifically in the context of an unconscionability challenge *to an arbitration provision* (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117 (*Armendariz*)), and the formulation has since been used almost exclusively in that context.  Notably, in *Concepcion*, the high court, immediately after explaining that "judicial hostility" towards arbitration has "manifested itself in 'a great variety' of 'devices and formulas,' " observed "that California's courts have been more likely to hold contracts to arbitrate unconscionable than other contracts.  [Citations.]"  (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1747].)  Having multiple formulations lends substantial credence to the "loud chorus of courts and commentators" who assert that, contrary to the high court's decisions, we are using unconscionability "as a ruse for a 'new judicial hostility' toward arbitration."  (Aragaki, AT&T Mobility v. Concepcion *and the Antidiscrimination Theory of FAA Preemption* (2012-2013) 4 Y.B. Arb. & Mediation 39, 60.)

Although the majority's endorsement of multiple formulations is problematic for these reasons, several of its related comments are worthy of note.  First and foremost is the majority's statement, as noted above, that all of the alternative formulations "mean the same thing" as "shock the conscience."  (Maj.

opn., *ante*, at p. 9.)  Second, the majority emphasizes that " 'central' " to all of its formulations is that substantive unconscionability is more than just " ' "a simple old-fashioned bad bargain." ' " (*Id.* at p. 8.)  Thus, "[a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain." (*Id.* at p. 9.)  Instead, the party resisting contract enforcement must prove, and a court must find, " 'a substantial degree of unfairness *beyond* "*a simple old-fashioned bad bargain*." ' " (*Ibid.*)  A contractual term does not meet this test merely because it can be characterized as being "one-sided" or " 'giv[ing] one side a greater benefit.' " (*Ibid.*)  Moreover, one-sidedness is not unconscionable if it " ' "provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need." ' " (*Ibid.*)  The majority's endorsement of various alterative formulations must be understood in light of these statements.

I also part company with the majority insofar as its one-sidedness analysis focuses separately on each of the challenged provisions in isolation, rather than the parties' bargain as a whole.  Our decisions establish that, in assessing a claim that a contract or a clause in a contract is unconscionable, a court must "examine the *totality of the agreement's substantive terms* as well as the circumstances of its formation to determine whether the *overall* bargain was" so one-sided as to be substantively unconscionable.  (*Sonic II*, *supra*, 57 Cal.4th at p. 1146, italics added.)  As Valencia explains, "[t]here are trade-offs in every contract.  Lien and security rights favor one party.  Payment favors the seller; required delivery of goods favors the buyer.  Notice and an opportunity to cure usually favor the party in the position to default.  But these types of provisions are almost inevitably not unconscionable, because in the context of the transaction as a whole, they are fair and reasonable. . . . [¶]  The same is true of arbitration provisions.  They, too, must be evaluated as a whole.  The provision itself may contain trade-offs, e.g., one side pays certain fees, the other side gains a measure of protection from outlier results, such that the entire provision needs to be examined based on its overall effect.

19

And, even then the arbitration provision needs to be evaluated in the context of the overall transaction."

Taking this approach, I conclude that the arbitration clause, viewed as a whole, is not substantively unconscionable under any of the formulations the majority endorses. As Valencia argues, the clause "is even-handed. It is well justified by the business realities of the buyer-dealer relationship and the threats posed by outlier results. . . . It involves mutual tradeoffs and a rational relationship to the nature of automobile purchases in general and to the specific transaction at issue — the purchase of a $50,000 pre-owned luxury automobile." "There is a balance of clauses. There is an opportunity for further arbitral scrutiny for outlier results. But given the nature of the disputes, that will be the exception, not the rule. And, further review works both ways; both buyers and dealers can seek review of outlier awards. Self-help remedies, such as repossession, that would be more often invoked by the dealer are excluded, but they are by definition outside even the litigation process; and comparable small claims remedies more likely invoked by the customer are also excluded. [¶] Finally, the dealer pays the buyer's initial arbitration expenses, up to $2,500. Only if the buyer loses a first round and wants to seek further arbitral review does the buyer have to advance further arbitration expenses (the review arbitrators ultimately allocate expenses). That's reasonable: That the party (buyer or dealer) losing the first round has to bear the expense of the finality round is common sense and furthers the interests of formality. Indeed, that's how the judicial system handles appeals — the appellant pays for the record on appeal and pays a higher fee than the respondent. [¶] And, in return, individuals get a speedy, cheaper, surer mechanism for resolving disputes." I agree with this analysis and would hold that the arbitration provision, evaluated as a whole, is not substantively unconscionable.

Nevertheless, I also agree with the majority that each of the challenged provisions, considered individually, is not substantively unconscionable, although I do not endorse all of the majority's reasoning. Regarding the provision allowing

a second arbitration if the arbitrator's award is either $0 or over $100,000, as noted above, this provision benefits *both* Valencia and Sanchez by protecting them in most cases from the cost of a second arbitration while offering both access to further review of extreme, outlier awards. Also mutually beneficial is the provision making grants, but not denials, of injunctive relief subject to a second arbitration. The Court of Appeal invalidated this provision based on the view that it benefits "only" Valencia because "the buyer, not the car dealer, . . . would be seeking preliminary or permanent injunctive relief." But, as the majority correctly notes, "car sellers sometimes must seek an injunction in order to repossess a car from the buyer." (Maj. opn., *ante*, at p. 17.) Thus, while it is true, as the majority observes, that injunctive relief may have a "broad impact" on Valencia by requiring it to "change its business practices" (*ibid.*), such relief also may have a substantial impact on buyers by forcing them to surrender their means of transportation. Accordingly, as Valencia argues, "both [parties] would benefit from a process that allows second-level review when their liberty is constrained by arbitral decisions requiring them to do or refrain from doing certain activities." Because these provisions do not "inordinately benefit" Valencia, under our decisions, they are not "unconscionably one-sided" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075, fn. 1 (*Little*)), regardless of whether Valencia is "more likely" (maj. opn., *ante*, at p. 17) or even "substantially more likely" to invoke them (*id.* at p. 16).[3]

---

[3]  Although mentioning the public's interest in injunctive relief, the majority notes that this case does not involve the "continued viability," in light of *Concepcion*, of *Broughton* and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, in which a majority of this court held that the FAA permits California to prohibit arbitration of claims for injunctive relief under the CLRA and the UCL. (Maj. opn., *ante*, at p. 17.) That question is pending before us in *McGill v. Citibank, N.A.* (S224086, review granted Apr. 1, 2015.)

As my earlier discussion indicates, I also agree with the majority that there is "nothing unconscionable" about the provision exempting repossession from arbitration. (Maj. opn., *ante*, at p. 24.) Because, as the majority explains, this self-help remedy is "outside of litigation," there is nothing unconscionable about not making it subject to arbitration, which is a litigation substitute. (*Ibid*.) Moreover, as the majority also explains, the provision that preserves the parties' ability to go to small claims court "likely favors the car buyer." (*Ibid*.) Thus, the exclusion of repossession from arbitration is not unfair, one-sided, or unconscionable.

Regarding the costs of a second arbitration, I first note that the Court of Appeal erred in stating that provision in question requires the party requesting the second arbitration to pay filing fees and other arbitration costs "in advance." The provision states that the requesting party "shall be responsible for" such fees and costs, but says nothing about the time of payment. The record otherwise provides no support for the Court of Appeal's statement.[4]

Moreover, I agree with the majority that the record contains "no evidence" that, at the time Sanchez signed the contract, the cost of a second arbitration would be "unaffordable" to him. (Maj. opn., *ante*, at p. 23.) On the contrary, as earlier explained, the record indicates that Sanchez had significant financial means when

---

[4]    The contract gives Sanchez the option of having arbitration conducted by, and under the rules of, the American Arbitration Association (AAA), the National Arbitration Forum, "or any other organization that [he] may choose subject to [Valencia's] approval." There is no basis to conclude or assume that, at the time the contract was executed, the selected organization would have required advance payment of all filing fees and other costs. Indeed, although the AAA rules in effect in 2008 called for advance payment of certain costs (AAA, Commercial Arbitration Rules and Mediation Procedures (amend. & eff. Sept. 1, 2007) rules R-4(a)(ii), R-49, O-8 (AAA General Rules); AAA, Supplementary Procedures for Consumer-Related Disputes (2005) rules C-2(a), C-2(e), C-8 (AAA Supplementary Rules)), they also provided for "defer[ral]" of this payment "in the event of extreme hardship on the part of any party" (AAA, General Rules, rule R-49). As to other arbitration expenses, the rules made advance payment subject to the AAA's discretion. (*Id.*, rule R-52.)

he signed the contract. In addition, at that time, one of the organizations the contract authorized to conduct the arbitration had established a substantially reduced fee schedule "for consumer-related disputes" in order "to make arbitration costs reasonable for consumers" (AAA General Rules, Administrative Fees) and had provided for reduction or elimination of administrative fees in cases of hardship.[5] Given these circumstances, the provision regarding the costs of a second arbitration does not support a finding of unconscionability.

Although I agree with the majority that the provision is not unconscionable, I disagree with the majority's analysis in several respects. The majority suggests that a finding of substantive unconscionability may be premised on a finding that the fee provision "would have a substantial deterrent effect in Sanchez's case." (Maj. opn., *ante*, at p. 22.) But deterrence is surely an important — and permissible — purpose of the provision. After all, at issue here are the costs of *a second, de novo arbitration* based on one party's dissatisfaction with the results of the first. Moreover, the provision's deterrent effect applies *mutually* to *both* parties; if Valencia is dissatisfied with an award and seeks a new arbitration, then it also is "responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs." In order to promote finality and secure the cost benefits of arbitration, parties to an arbitration agreement may want to discourage each other from invoking a contractual right to

---

[5]     The AAA's generally applicable rules provided: "The AAA may, in the event of extreme hardship on the part of any party, . . . reduce the administrative fees." (AAA General Rules, rule R-49.) Its Supplementary Rules for consumer-related disputes expressly incorporated Civil Code section 1284.3, stating: "Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California." (AAA Supplementary Rules, rule C-8.)

a second, new arbitration. Indeed, litigants wanting to appeal in court face similar deterrence, as they are responsible for appellate filing fees and, if unsuccessful, the other party's appellate costs. (Cal. Rules of Court, rules 8.25, 8.278(a).) Surely such *mutual* deterrence is permissible if, as the majority correctly states, "the arbitration clause did not have to provide for an appeal" at all. (Maj. opn., *ante*, at p. 21.)

However, the majority continues, having provided for "an appeal," the arbitration clause "may not structure the appeal process so that it unreasonably favors" Valencia. (Maj. opn., *ante*, at p. 21.) Under this analysis, the question should not be, as the majority suggests, whether the provision would substantially deter Sanchez from requesting a second arbitration — which, as just explained, is one of its permissible and mutually applicable purposes — but should be whether the level of deterrence "unreasonably favors" Valencia. (*Ibid.*) In other words, a finding of substantive unconscionability would, under the majority's analysis, require determination of (1) the provision's *relative* deterrent effect on Valencia and Sanchez — which, in turn, would require evidence of the provision's deterrent effect at the time the contract was signed on *both* Valencia and Sanchez — and (2) whether the difference, if any, in deterrent effect was unjustified by " ' "a legitimate commercial need" ' " and established " 'a substantial degree of unfairness *beyond* "a simple old-fashioned bad bargain*." ' " (*Id.* at p. 9.) In my view, this convoluted and complicated inquiry is unnecessary; that the provision might have a greater "deterrent effect" (*id.* at p. 22) on one of the parties to this contract for a $50,000 luxury car does not render it one-sided or substantively unconscionable. Indeed, given, as noted above, that litigants wanting to appeal in court face similar deterrence — in that they are responsible for appellate filing fees and, if unsuccessful, the other party's appellate costs — to the extent the provision would deter Valencia less than Sanchez from requesting a second arbitration, it "confer[s] no more of an advantage than would be the case had the

24

action been brought in court," and thus is not unconscionable.  (*Little*, *supra*, 29 Cal.4th at p. 1075, fn. 1.)

Moreover, the FAA preempts the majority's rule insofar as it makes a "substantial deterrent effect" sufficient to establish substantive unconscionability. (Maj. opn., *ante*, at p. 22.)  In *American Exp. Co. v. Italian Colors Restaurant* (2013) __ U.S. __ [133 S.Ct. 2304, 2308-2311] (*Italian Colors*), the high court held that the FAA required enforcement of an arbitration clause notwithstanding uncontested proof that it would impose prohibitive costs on plaintiffs suing under the federal antitrust laws.  The plaintiffs, in resisting enforcement, relied on "a judge-made exception to the FAA" — known  as "[t]he 'effective vindication' exception" — which allows federal courts to invalidate arbitration agreements "that prevent the 'effective vindication' of a federal statutory right."  (*Id.* at p. __ [133 S.Ct. at p. 2310].)  This exception, the high court explained, "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies,' [citation].  That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights.  And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable.  [Citation.]  But the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy.  [Citation.]"  (*Id*. at pp. __ [133 S.Ct. at pp. 2310–2311].)  Under this binding precedent, if a cost provision does not impose fees that "make access to the forum impracticable" (*ibid.*), then the FAA precludes a court from invalidating it as unconscionable because of a subjective determination that it will, in a particular case, "have a substantial

deterrent effect" on a party's exercise of the right to request a second arbitration.**6** (Maj. opn., *ante*, at p. 22.)

I also disagree with the majority's view that parties asserting unconscionability based on their inability to afford arbitration costs may satisfy their burden with evidence of their financial situation at the time a " 'dispute arises.' " (Maj. opn., *ante*, at p. 22.) As the majority correctly recognizes (*ibid.*), a determination of unconscionability must be based on the circumstances that existed "at the time [the contract] was made" (Civ. Code, § 1670.5, subd. (a)), not on hindsight in light of subsequent events. (*Setzer v. Robinson* (1962) 57 Cal.2d 213, 217; *Colton v. Stanford* (1890) 82 Cal. 351.) Thus, in determining affordability, Sanchez must submit evidence showing, not what he (and, under the majority's approach, Valencia) could afford when the dispute arose, but what he could have afforded at the time he signed the contract. The majority's assertion otherwise "is contrary to statute." (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1583.)

Finally, the majority's analysis of the cost provision improperly blurs distinct grounds on which this court has relied in prior decisions to invalidate arbitration provisions: unconscionability, which is at issue here, and public policy,

---

**6**    Even under the view of the dissent in *Italian Colors*, the FAA would, for two reasons, preempt the majority's rule. First, the effective vindication exception is inapplicable when a party "*could* feasibly vindicate" his or her claim in arbitration. (*Italian Colors*, *supra*, __ U.S. at p. __ [133 S.Ct. at p. 2320] (dis. opn. of Kagan, J.).) A second arbitration is not infeasible merely because a cost provision has "a substantial deterrent effect" on a party's decision to request a second arbitration. (Maj. opn., *ante*, at p. 22.) Second, concerns about enforcing "*state* law" do not even "implicate the effective-vindication rule. When a state rule allegedly conflicts with the FAA, [courts] apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives. If the state rule does so — as . . . in [*Concepcion*] — *the Supremacy Clause requires its invalidation*." (*Italian Colors*, *supra*, at p. __ [133 S.Ct. at p. 2320] (dis. opn. of Kagan, J.), final italics added.)

26

which is not.  As the majority explains (maj. opn., *ante*, at p. 18), in *Armendariz*, *supra*, 24 Cal.4th at pages 110-111, this court held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court."  However, contrary to what the majority's discussion suggests, this holding was *not* based on unconscionability.  Rather, it was based on the view that forcing employees to pay costs in arbitration they would not have to pay in court would be "contrary to public policy" (*id.* at p. 110) in that it would "effectively prevent[] them from vindicating" (*id*. at p. 107) unwaivable statutory rights established for a public reason (*id*. at pp. 100-101).  (See *Little*, *supra*, 29 Cal.4th at p. 1084 [*Armendariz's* rule "is derived from state contract law principles regarding the unwaivability of certain public rights"].)  Similarly, the discussion from *Gutierrez* on which the majority relies (maj. opn., *ante*, at pp. 20-21) addressed, not unconscionability, but whether contractual terms, by "undercut[ting] unwaivable state statutory rights," "violate[d] the public policy underlying [those] rights."  (*Gutierrez*, *supra*, 114 Cal.App.4th at pp. 94-95.)  "[T]he public policy and unconscionability defenses" this court has announced "are different in important respects.  A public policy defense is concerned with the relationship of the contract to society as a whole, and targets contractual provisions that undermine a clear public policy, such as an unwaivable statutory right designed to accomplish a public purpose.  [Citation.] Unconscionability is concerned with the relationship between the contracting parties and one-sided terms [citation], such that consent in any real sense appears to be lacking.  Contracts can be contrary to public policy but not unconscionable [citation] and vice versa [citation]."  (*Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 686 (*Sonic I*).)  The majority loses sight of these differences in its discussion of *Armendariz* and *Gutierrez*.

But there is another important reason for not applying *Armendariz*'s categorical rule here, in addition to the fact that it is not based on unconscionability:  under *Italian Colors*, the FAA preempts it.  As earlier explained, the high court held in that case that the FAA required enforcement of an arbitration clause notwithstanding uncontested proof that it would impose prohibitive costs on plaintiffs, thus preventing them from effectively vindicating their rights under the federal antitrust laws.  (*Italian Colors*, *supra*, __ U.S. at pp. __ [133 S.Ct. at pp. 2308-2311.)  The effective vindication exception, the high court held, "perhaps" covers cost provisions that make access to arbitration "impracticable," but does not cover provisions that merely make a federal claim "not worth the expense" to prove.  (*Id.* at pp. __ [133 S.Ct. at pp. 2310–2311].)  *Armendariz*'s categorical rule is based, not *on proof* that arbitration *would, in fact,* be financially impracticable for a particular employee, but on the view that the mere "possibility" employees "will be charged substantial forum costs" in arbitration would "chill[] the exercise" of their statutory right.  (*Armendariz*, *supra*, 24 Cal.4th at p. 110.)  If, as *Italian Colors* holds, the FAA requires enforcement of an arbitration provision despite actual proof it would impose prohibitive costs, then surely it precludes courts from invalidating an arbitration clause based on the theoretical, unproven chilling effect of imposing "any *type* of expense that the [party resisting arbitration] would not be required to bear" in a court action.**7**  (*Armendariz*, *supra*, 24 Cal.4th at p. 110.)

For the preceding reasons, I agree that Sanchez has failed to establish substantive unconscionability.  I therefore concur in the judgment.

**CHIN, J.**

---

**7**      For the same reasons previously discussed in connection with the majority's substantial deterrence standard (*ante*, p. 26, fn. 6), even under the view of the dissent in *Italian Colors*, the FAA would preempt *Armendariz's* prophylactic, categorical rule.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Sanchez v. Valencia Holding Company, LLC
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 201 Cal.App.4th 74
**Rehearing Granted**

_____

**Opinion No.** S199119
**Date Filed:** August 3, 2015
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Rex Heeseman

_____

**Counsel:**

Tharpe & Howell, Christopher S. Maile, Soojin Kang; Callahan Thompson Sherman & Caudill, Robert W. Thompson, Charles S. Russell; Atkinson, Andelson, Loya, Ruud & Romo, Kellie S. Christianson; Greines, Martin, Stein & Richland, Robert A. Olson, Edward L. Xanders, Meehan R. Rasch and David E. Hackett for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton and Anna S. McLean for Toyota Motor Credit Corporation and General Motors Financial Company, Inc., as Amici Curiae on behalf of Defendant and Appellant.

Pillsbury Winthrop Shaw Pittman, Richard M. Segal and Nathaniel R. Smith for Nissan Motor Acceptance Corporation as Amicus Curiae on behalf of Defendant and Appellant.

Littler Mendelson, Henry D. Lederman, Alexa L. Woerner, Anthony Ly; Simpson, Cameron, Medina & Autrey and Erin Nemirovsky Medina for Volt Management Corp. and Volt Information Sciences, Inc., as Amici Curiae on behalf of Defendant and Appellant.

Horvitz & Levy, Lisa Perrochet, Felix Shafir, Robert H. Wright and John F. Querio for California New Car Dealers Association as Amicus Curiae on behalf of Defendant and Appellant.

Severson & Werson, Jan T. Chilton and Donald J. Querio for American Financial Services Association, California Financial Services Association and California Bankers Association as Amici Curiae on behalf of Defendant and Appellant.

Erika C. Frank and Fred J. Hiestand for The California Chamber of Commerce and The Civil Justice Association of California as Amici Curiae on behalf of Defendant and Appellant.

Mayer Brown, Donald M. Falk, Andrew J. Pincus, Evan M. Tager, Archis A. Parasharami and Brian J. Wong for The Chamber of Commerce of the United States of America, The Association of Global Automakers, Inc., and The Alliance of Automobile Manufacturers as Amici Curiae on behalf of Defendant and Appellant.

1

**Page 2 – S199119 – counsel continued**

**Counsel:**

Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Toschi, Sidran, Collins & Doyle, David R Sidran, Thomas M. Crowell; Manning Leaver Bruder & Berberich, Robert D. Daniels and Crystal S. Yagoobian for Federated Mutual Insurance Company as Amici Curiae on behalf of Defendant and Appellant.

Rosner, Barry & Babbitt, Hallen D. Rosner, Christopher P. Barry and Angela J. Smith for Plaintiff and Respondent.

Kreindler & Kreindler, Gretchen M. Nelson and Jacob H. Mensch for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

Chavez & Gertler, Mark A. Chavez and Nance F. Becker for Arthur Lovett as Amicus Curiae on behalf of Plaintiff and Respondent.

Aimee Feinberg for Consumers for Auto Reliability and Safety as Amicus Curiae on behalf of Plaintiff and Respondent.

Arbogast Law and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

McKenna Long & Aldridge and J. Alan Warfield for Association of Southern California Defense Counsel as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert A. Olson
Greines, Martin, Stein & Richland
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90036
(310) 859-7811

Hallen D. Rosner
Rosner, Barry & Babbitt
10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131
(858) 348-1005